## STOWE et al. v. WOOTEN.
### No. 1392–6000.

Commission of Appeals of Texas, Section B. June 24, 1933.

Kirby, King & Overshiner and York & Camp, all of Abilene, for plaintiffs in error.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for defendant in error.

LEDDY, Judge.

A brief statement of this case will suffice to elucidate the legal question presented for determination.

Plaintiffs in error sought in this action to set aside deeds of conveyance whereby defendant in error conveyed to them certain lots situated in the Country Club addition to the city of Abilene, and to cancel vendor lien notes representing the purchase money recited in said deeds of conveyance. It was averred that defendant in error had induced the execution of said deeds and notes by certain false and fraudulent representations knowingly and willfully made; some of these representations consisted of promises alleged to have been made without the then existing intention to perform the same.

There was a trial before the court with a jury. The case was submitted on special issues, which were answered favorably to the defendant in error. Upon such verdict the court rendered judgment denying plaintiffs in error the relief prayed for, and in favor of defendant in error on his cross-action for the amount of the vendor lien notes given him by plaintiffs in error, and foreclosing the vendor's liens on the lots described in said conveyances.

The Court of Civil Appeals affirmed the judgment of the trial court [37 S.W.(2d) 1055] and the Supreme Court has granted the writ applied for on the conflicts alleged in the application.

The fraudulent representations relied upon are disclosed by the special issues submitted and answered by the jury. The pertinent issues and the jury's answers thereto are as follows:

"Special Issue No. 3. Did Mayfield or Magee or Lewis, before Plaintiffs signed the Unit Contracts, represent to Plaintiffs that Highway No. 30 had been definitely located through the Country Club Addition by the extension of Butternut Street?

"Answer: No.

"Special Issue No. 5. In selling Unit Contracts to plaintiffs, did Mayfield or Magee or Lewis, state to plaintiffs that electricity for lights was to be placed on the Country Club Addition at once?

"Answer: Yes.

"Special Issue No. 6. Was the promise, if any, to place electricity for lights on the Country Club Addition, a material inducement to plaintiffs in their purchasing of Unit Contracts in the Country Club Addition?

"Answer: No.

"Special Issue No. 7. Did H. O. Wooten, at the time the promises, if any, in regard to electricity for lights was made, intend to comply with said promises?

"Answer: Yes.

"Special Issue No. 8. Has H. O. Wooten substantially complied with the promise, if any, to place electricity for lights on the Country Club Addition?

"Answer: Yes.

"Special Issue No. 9. In selling to plaintiffs, Unit Contracts in the Country Club Addition, did Mayfield or Magee or Lewis promise plaintiffs that natural gas was to be placed upon or made available for said Addition?

"Answer: No."

Upon the trial plaintiffs in error sought to prove by several witnesses that they signed contracts to purchase lots in said addition from defendant in error on a date subsequent to the execution of contracts by plaintiffs in error, and that at said time the defendant in error's agents made statements to them promising the placing of electric lights, water, gas, and other public utilities upon said addition, and also stated to them that highway No. 30 would run through said addition. Upon objection by defendant in error this testimony was excluded by the court.

Plaintiffs in error contend that the proferred evidence was admissible upon the following grounds: (1) That the excluded testimony tended to support the allegations of plaintiffs in error's petition that the alleged false statements of defendant in error and his agents were a part of a general scheme to defraud the public, and the plaintiffs in error; (2) that said testimony tended to show an intent on the part of defendant in error and his agents to have plaintiffs in error act on such statements; (3) that said testimony tended to corroborate the plaintiffs in error's testimony to the effect that said statements were made to them by defendant in error's agents, which facts were denied by defendant in error; (4) that said testimony was circumstantial evidence, which, taken with other circumstances, tended to show the existence of a scheme by defendant in error and his agents to defraud the plaintiffs in error.

█ It is the settled doctrine in this state that in actions for fraud a person is responsible to the party deceived for what he represents to be true, regardless of his lack of intent to deceive. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Henderson v. San Antonio & M. G. R. Co., 17 Tex. 560, 67 Am. Dec. 675; Poindexter v. Davis (Tex. Com. App.) 27 S.W.(2d) 139; Graves v. Haynes (Tex. Com. App.) 231 S. W. 383. Such responsibility exists, even though the promissor may honestly believe in the truth of the representations he has made. Zavala Land & Water Co. v. Tolbert (Tex. Civ. App.) 184 S. W. 523 (writ refused); Missouri, K. & T. Railway Co. v. Maples (Tex. Civ. App.) 162 S. W. 426 (writ refused); Benton v. Kuykendall (Tex. Civ. App.) 160 S. W. 438 (writ refused).

While in the ordinary cases of fraud knowledge of the falsity of representations is not essential in order to enable the injured party to rescind or to recover damages, there are certain cases which require proof of a fraudulent intent before a recovery can be awarded. An action to set aside a conveyance alleged to have been made by a vendor with the intent to defraud creditors is one falling within this rule. In such a case the terms of the statute require that fraudulent intent be established before a recovery may be had. Day v. Stone, 59 Tex. 612. Similarly, in actions for fraud where exemplary damages are claimed, proof of a fraudulent intent is essential. Dwyer v. Bassett, 1 Tex. Civ. App. 513, 21 S. W. 621.

█ We think evidence of similar fraudulent representations made to others should not be admitted except in those cases where the motive or intent with which an act is done becomes material. Under such circumstances, it is competent to show other acts of the party whose conduct is brought in question, as such testimony tends to throw light upon the issue involved.

The rule upon this subject is fairly stated by the author of Ruling Case Law, vol. 12, p. 435, § 182, in the use of the following lan-

guage: "Such evidence, when admitted at all, is competent only on the issue of motive or intention and not on the issue whether the defendant made the representations complained of, hence it is not admissible where it is immaterial to the cause of action whether the false representations were made with a specifically bad intent or not; or in an action for damages for false representations in those states where proof of scienter is not required in such actions."

█ █ Under the rule thus announced, the excluded evidence was not material upon the issue as to whether defendant in error's agents represented to plaintiffs in error that highway No. 30 had been definitely located through the Country Club addition by the extension of Butternut street. Moreover, such representation was of an existing fact, and, if the same were false and relied upon, it would be wholly immaterial whether defendant in error knew it was false at the time it was made.

█ But it is argued by plaintiffs in error that the representations made by the agents of defendant in error with respect to the placing of electric lights in the addition and the making of gas available for the lot owners involved an intention upon the part of defendant in error to defraud, and that therefore the excluded evidence was admissible as tending to throw light upon that issue. This contention cannot be sustained for several reasons:

First, because upon the issue as to whether the agents of defendant in error promised plaintiffs in error electricity for lights in the Country Club addition the jury found that such promise was not relied upon by plaintiffs in error and in addition to this found that the promise was in fact substantially complied with by defendant in error. Even though the defendant in error did not intend to perform his promise in this respect at the time he made it, if he did in fact substantially comply with such promise, it would be wholly immaterial that he did not intend to perform it at the time it was made. Even if the jury found that such promise was made without intention to perform, such finding would not have entitled plaintiffs in error to a rescission, as the jury also found that they did not rely upon such promise. The excluded evidence could not properly have been considered by the jury in determining the issue of reliance upon such promise.

█ Second, because the jury found that defendant in error's agents did not promise plaintiffs in error that natural gas was to be placed upon or made available for said addition. Under this finding of the jury the issue of intention to perform this particular promise was eliminated from the case.

█ Third, because the excluded evidence was of no probative force in establishing an intention upon the part of the defendant in error not to perform the promises relied upon by plaintiffs in error.

It is difficult to perceive how the fact that defendant in error had made similar promises to others in respect to making available electricity and gas for the owners of lots in said addition would tend to establish the fact that he did not intend at the time he made such promises to perform them. If it had been shown that in other sales of real estate made by defendant in error, not connected with the transaction here involved, he had made similar promises which he had failed to perform, such fact would be a circumstance tending to show that performance was not intended in the present instance.

The theory upon which evidence of other similar frauds is admissible is that if a motive exists prompting a particular course of conduct and it be shown that in pursuing such course, a defendant has deceived and defrauded one person it may be fairly inferred that similar conduct toward another at about the same time and in connection with a like subject was actuated by the same intention. Butler v. Watkins, 13 Wall. 456, 20 L. Ed. 629.

█ Here the proferred testimony does not go to the extent of showing that defendant in error did not intend to perform the promises shown to have been made to others. The offer was merely to show that he had made similar promises to others. The only probative force of such testimony would be to corroborate plaintiffs in error's statement that the promises to which they testified were in fact made by the agents of defendant in error. Evidence as to fraudulent representations made to others cannot be used for any such purpose. 12 R. C. L. p. 436; Jordan v. Osgood, 109 Mass. 457, 12 Am. Rep. 731; Perkins v. Prout, 47 N. H. 387, 93 Am. Dec. 449; Wilson v. Carpenter's Adm'r, 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824; McKay v. Russell, 3 Wash. 378, 28 P. 908, 28 Am. St. Rep. 44.

There are a number of cases cited by plaintiffs in error which it is claimed conflict with the holding of the Court of Civil Appeals that the proposed testimony was inadmissible. An examination of these cases discloses, however, that where evidence of this character has been held to be admissible, the records disclose that the motive or intent of the party charged to have committed fraud was properly an issue in the case. The findings of the jury on issues upon which the proposed testimony was clearly not pertinent eliminated any issue of defendant in error's motive or intention from the case.

We recommend that the judgment of the

·Court of Civil Appeals affirming the judgment of the trial court be affirmed.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.