NO. 12-00-00339-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


ANNIE MAE HOPKINS, INDIVIDUALLY
§
 APPEAL FROM THE 

AND AS INDEPENDENT EXECUTRIX OF

THE ESTATE OF ARCHIE BISHOP

JOLLEY, DECEASED, ARCHIE BISHOP 

JOLLEY, JR., AND REO JOLLEY, 

APPELLANTS
§
 COUNTY COURT AT LAW


V. 


CLIFTON T. NETTERVILLE,

APPELLEE
§
 HOUSTON COUNTY, TEXAS

 

 Annie Mae Hopkins, individually and as independent executrix of the estate of Archie Bishop
Jolley, deceased, Reo Jolley, and Archie Jolley, Jr. ("Appellants") appeal from a judgment entered
on a jury verdict in favor of Appellee Clifton T. Netterville ("Netterville") in their suit to remove
cloud and quiet title on real property. In seven issues, they attack the legal and factual sufficiency
of the evidence to support the jury's answers to special issues. Because this lawsuit does not involve
a cause of action for which an award of attorney's fees is authorized, we delete the trial court's award
of attorney's fees to Netterville and its decree that Netterville has satisfied this court's judgment of
October 28, 1999. We affirm the trial court's judgment as modified.


Background

 On December 13, 1978, Netterville executed a deed of trust and promissory note for
$9,000.00 payable to Bishop Jolley and secured by a deed of trust. On that same date, Bishop Jolley
executed a warranty deed in favor of Netterville conveying his undivided interest in a tract of land
in Houston County. The warranty deed provides that Bishop Jolley sold to Netterville all of his
"undivided interest in a 31.07-acre tract out of a 51.477 acres of land described by metes and bounds
in EXHIBIT 'A' attached hereto and made a part hereof." The deed further declares: "It is the
intention of Grantor to convey all of his undivided interest in the 51.477 acre tract." Exhibit A gives
the metes and bounds description of a 51.477-acre tract out of the John Beatty Survey, A-7 in
Houston County. These documents were duly recorded in the county deed records. Netterville
immediately fenced off 31.07 acres and paid Bishop Jolley in monthly installments over the course
of about ten years. Netterville used the land for grazing, hunting and cultivation continuously from
the time of the transaction until the time of trial. 

 Shortly after Netterville and Jolley entered into this agreement, on January 16, 1979, without
notifying Netterville, Bishop Jolley executed an assignment of the Netterville note to his sons, Reo
and Archie. This document was also recorded in the deed records. Bishop Jolley died in October
1997. This lawsuit was filed shortly thereafter.

 Appellants alleged that the transaction between Bishop Jolley and Netterville was tainted in
several different ways: that Netterville caused the deed to be altered after execution but before
recordation, the property description was illegal, the deed was procured by fraud, part of the property
conveyed was community property, Bishop Jolley did not have legal authority to sell, and Netterville
failed to pay. As a result, their argument continues, they are the true owners of the land at issue,
Netterville placed a cloud on their title, and he slandered their title. They asked the court to quiet
title, declare the deed void, and enter an order cancelling the deed. They prayed for actual and
exemplary damages, pre- and post-judgment interest, costs, and attorney's fees.

 Netterville counterclaimed for a declaration that he is the rightful owner. He alleged that the
plaintiffs had engaged in a conspiracy to cloud his title and, alternatively, he alleged unjust
enrichment, monies had and received, breach of warranty, adverse possession, and reformation. He
prayed for an order that plaintiffs take nothing and that the cloud they cast on his title be removed,
for reformation of the deed, and that he be awarded all actual and exemplary damages, pre- and post-judgment interest, costs, and attorney's fees.

 The jury found that there was no material alteration to the deed, that Netterville fulfilled his
obligation of payment in accordance with the deed of trust, that Netterville adversely possessed the
property under both the five and ten-year limitations periods, that Appellants' claims are barred by
laches, and that Appellants clouded title to the property. The jury awarded Netterville attorney's fees
in the total amount of $42,000.00, including sums for potential appeals. The trial court disregarded
the jury's findings that Netterville adversely possessed the property. Based on the jury's remaining
answers, the trial court rendered judgment in Netterville's favor. After applying an offset for an
amount due the Appellants pursuant to a prior order from this court, the trial court awarded
Netterville attorney's fees in the amount of $15,566.00 for services through trial, an additional
$25,000.00 in attorney's fees for appeals, post-judgment interest, and costs.


Alteration of the Deed

 In their first issue, Appellants assert that the evidence does not support the jury's answer to
question one by which the jury failed to find a material alteration of the deed. In their argument for
this issue, Appellants assert that Bishop Jolley had no authority to sell the land as there was no legal
metes and bounds description ever obtained. Further, they point out that the 31.07 acres at issue are
part of an undivided 150-acre tract belonging to the Jolley family collectively, not Bishop Jolley
individually. They assert that the record does not show the extent or specific identity and location
of Bishop Jolley's undivided interest in the 150-acre tract. They also complain that Netterville and
his surveyor trespassed to get a survey so evidence of the survey should be excluded. The trial court,
the argument continues, should not have submitted question one because the defective description
of the land was obtained by trespass. Also under this issue, Appellants assert that even if it is shown
that Bishop Jolley was entitled to convey his undivided interest in the 31.07- acre tract, the deed he
signed was ineffective because it was altered before it was recorded in the county deed records. 
They further argue that the trial court should not have submitted question one because Netterville's
counterclaim for reformation was filed more than four years after Netterville should have discovered
the error in the deed. They sum up their argument under issue one by asserting that the jury's answer
to question one should be disregarded because the finding is illegal and immaterial.

 We need not address Appellants' assertions that Bishop Jolley had no authority to sell the
property, that the extent of his interest is unknown, that Netterville's survey was obtained by
trespass, or that Netterville's reformation claim is barred by limitations. These issues were not
submitted to the jury or established as a matter of law. These arguments are therefore waived. See
Akin v. Dahl, 661 S.W.2d 911, 913 (Tex. 1983), cert. denied, 466 U.S. 938 (1984). Further, as the
trial court did not reform the deed, Appellants' argument regarding Netterville's reformation claim
is moot. Additionally, Appellants did not object to submission of question one on the grounds that
the survey was obtained by trespass or that Netterville's attempt to reform the deed occurred after
limitations had run. If no objection was made to an issue on the ground urged on appeal, the
complaint is waived. Gutierrez v. County of Zapata, 951 S.W.2d 831, 844 (Tex. App.-San Antonio
1997, no writ). In fact, Appellants specifically stated at the charge conference that they had no
objection to question number one.

 If the appellant is attacking the legal sufficiency of an adverse finding to an issue on which
he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established
all vital facts in support of the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989). In reviewing a "matter of law" challenge, the reviewing court employs a two-prong test. 
First, the court must examine the record for evidence that supports the jury's finding, while ignoring
all evidence to the contrary. Id. Second, if there is no evidence to support the fact finder's answer,
then, the entire record must be examined to see if the contrary proposition is established as a matter
of law. Id. 

 Whether an instrument has been altered is a question of fact for the jury. Sea Hoss Marine
Enters., Inc. v. Angleton Bank of Commerce, 536 S.W.2d 592, 595 (Tex. Civ. App. - Houston [1st
Dist.] 1976, writ ref'd n.r.e.). The party offering an instrument that appears to have been altered after
execution has the burden of accounting for its condition. Decor Dimensionals, Inc. v. Smith, 494
S.W.2d 266, 268 (Tex. Civ. App.-Dallas 1973, no writ). Where a party has the burden to prove a
fact, no affirmative evidence is required to support its nonexistence or to permit a negative finding
on the issue. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973).

 Pursuant to the first prong of the applicable two-prong test for review, we examine the record
for evidence that supports the jury's failure to find an alteration. Although we find nothing in the
record affirmatively supporting the jury's failure to find an alteration of the deed, this alone does not
favor Appellants. See id. In accordance with the second prong of the applicable test, we examine
the entire record to see if the contrary proposition, that the deed was altered, is established as a
matter of law. See Sterner, 767 S.W.2d at 690. Annie Mae Hopkins testified that "someone," she
did not know who, typed in one sentence after Bishop Jolley had signed the deed. That added
sentence constitutes the alteration complained of in Appellants' petition. She pointed out that
Netterville stood to gain from the alteration. Hopkins was not a party to the transaction between
Bishop Jolley and Netterville, nor was she present at the time of the transaction. Reo Jolley testified
that he was not aware of the transaction between his father and Netterville at the time it took place.
Netterville testified that he did not have possession of the deed and did not type anything on the
document. Bishop Jolley, of course, was not available to testify. Both Jolley and Netterville were
represented by legal counsel at the time of the transaction and Jolley's attorney drafted the
documents. Neither of those attorneys testified. Finally, we have before us the deed itself containing
apparently conflicting language regarding the amount of land conveyed. One of the conflicting
sentences appears to be in darker ink than the remainder of the document and the left margin is not
aligned with the other lines in that paragraph. However, the record simply does not provide an
explanation for the conflict or for the difference in ink or the faulty alignment. Further, the record
does not show definitively that the suspect sentence was not in place at the time Bishop Jolley and
Netterville signed the deed. Appellants did not meet their burden to show how the deed came to
include that sentence. See Smith, 494 S.W.2d at 268. We conclude this evidence does not establish
as a matter of law that the deed was altered. 

 Appellants' complaint under this issue that the evidence is factually insufficient to support
the jury's answer to question one is waived. They did not raise this complaint in their motion for
new trial and, therefore, it is not preserved for our review. Tex. R. Civ. P. 324(b); Cecil v. Smith,
804 S.W.2d 509, 510 (Tex. 1991). We overrule Appellants' first issue.


Payment of the Note

 In their second issue, Appellants contend the evidence is legally and factually insufficient to
support the jury's answer to question two, by which it found that Netterville fulfilled his obligation
of payment in accordance with the deed between Netterville and Bishop Jolley. They assert that the
trial court erred in submitting question two because they proved as a matter of law that Netterville
did not obtain a release of lien and he did not show that he paid the full amount for the property. 
Appellants appear to argue that, based on the assignment of lien from Bishop Jolley to Archie and
Reo Jolley, Netterville owed the purchase price to Archie and Reo. Further, since Netterville paid
Bishop, who, after the assignment was no longer the lien holder, he cannot be given credit for having
paid for the land.

 If an appellant is attacking the legal sufficiency of an adverse finding of an issue on which
he did not have the burden of proof, the appellant must demonstrate on appeal that there is no
evidence to support the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 
In reviewing no evidence points of error, the reviewing court must consider only the evidence and
inferences tending to support the trial court's finding, disregarding all contrary evidence and
inferences. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). If there is any
evidence of probative force to support the finding, the no evidence issue must be overruled and the
finding upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). 

 Netterville testified that he made an $800.00 down payment on the land, although the earnest
money contract reflects a $500.00 down payment. Netterville explained that he paid for the land in

monthly installments of $100.00 beginning in January 1979 until the note was paid in full in 1988. 
He provided as many of his cancelled checks as he could find, an amortization schedule, and his
personal income tax returns showing that he deducted the interest on the note. He testified that he
did not obtain a release of lien when the note was paid in full because he did not believe it was
necessary. The assignment to Archie and Reo is dated January 16, 1979, and it was recorded in the
deed records. However, Netterville testified that he had no notice of the assignment and always
made his payments to Bishop Jolley. Netterville's testimony and exhibits constitute some evidence
of probative force supporting the jury's finding that Netterville fulfilled his obligation in accordance
with the deed. Id.

 If a party is attacking the factual sufficiency of an adverse finding on an issue to which the
other party had the burden of proof, the attacking party must demonstrate that there is insufficient
evidence to support the adverse finding. See Croucher, 660 S.W.2d at 58. In addressing a factual
sufficiency of the evidence challenge, this court must consider and weigh all of the evidence and set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). This court is not a fact finder
and may not pass on the credibility of the witnesses or substitute our judgment for that of the trier
of fact. Clancy v. Zale Corp., 705 S.W.2d 820, 826 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). 
Findings of fact are the exclusive province of the jury and/or trial court. Bellefonte Underwriters
Ins. Co. v. Brown, 704 S.W.2d 742, 744 (Tex. 1986). Accordingly, if there is sufficient competent
evidence of probative force to support the finding, it must be sustained. Beall v. Ditmore, 867
S.W.2d 791, 795-96 (Tex. App.-El Paso 1993, writ denied). 

 As explained above, Netterville testified that he paid Bishop Jolley in full for the land and
provided some documentation to support the testimony. Reo Jolley testified that, in 1984 and again
in 1985, he took his father to Houston to see Netterville to collect some money. Reo did not know
why Bishop Jolley was trying to get money from Netterville and they were unable to find Netterville. 
He testified that to his knowledge his father never collected the money from Netterville. Reo's
testimony provides nothing more than the insinuation that he and Bishop Jolley were attempting to
collect payments for the property at issue here. Further, even assuming that was the case, the jury
could have disbelieved Reo's testimony. See Brown, 704 S.W.2d at 744.

 Appellants apparently rely on the assignment to assert that Netterville did not pay for the
land. Netterville indeed did not pay Archie or Reo for the land. However, he did not have notice
of the assignment. Without notice of the assignment, Netterville was not liable to the assignees. 
Phillips v. Latham, 523 S.W.2d 19, 22 (Tex. Civ. App.-Dallas 1975, writ ref'd n.r.e.). Therefore,
payment to Bishop Jolley after assignment to Archie and Reo is effective to fulfill Netterville's
obligation under the deed. See id. The jury's finding in response to question number two is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Cain,
709 S.W.2d at 176. We overrule Appellants' second issue.


Adverse Possession

 In their third and fourth issues, Appellants contend the evidence does not support the jury's
answers to questions three and four by which it found that Netterville adversely possessed the
property under the five and ten-year limitation periods. They argue that this is not a suit for trespass
to try title or for adverse possession. Netterville's counterclaim included, among other claims, a
claim in the alternative for adverse possession. He presented evidence on the issue and it was
presented to the jury. However, the trial court disregarded the jury's answers to the adverse
possession questions. Therefore, we need not address Appellants' third and fourth issues. See Tex.
R. App. P. 47.1.


Laches

 In their fifth issue, Appellants assert the evidence does not support the jury's answer to
question number five by which it found that Appellants' claims are barred by laches. They argue that
the evidence shows as a matter of law that their claims are not barred by laches as suit was filed just
two months after Hopkins became executrix of Bishop Jolley's estate. They further argue that laches
is not a defense to a claim of title.

 Assuming that laches is a defense to Appellants' claims and regardless of whether the
evidence supports the jury's answer, we nonetheless conclude that the jury's finding of laches is
inapposite and Appellants' complaint under this issue is moot. The jury found in favor of Netterville
on the merits of Appellants' claims and we have overruled Appellants' complaints as to that finding. 
Therefore, we need not discuss the merits of Netterville's affirmative defense of laches. See Tex.
R. App. P. 47.1.


Cloud on Title

 In their sixth issue, Appellants assert that the evidence does not support the jury's answer to
question six by which it found that Appellants clouded title to the property Bishop Jolley conveyed
to Netterville. Without citation to authority or specific explanation, they complain that the question
should not have been submitted to the jury because the evidence shows as a matter of law that
Netterville never obtained title to the property and that the jury's finding is so against the great
weight and preponderance of the evidence as to be manifestly unjust.

 A cloud on title has been generally defined as a semblance of title, either legal or equitable,
which is, in fact, invalid or would be inequitable to enforce. Vanguard Equities, Inc. v. Sellers, 587
S.W.2d 521, 525 (Tex. Civ. App.-Corpus Christi 1979, no writ). A cloud on title is an outstanding
claim or encumbrance apparently valid, but that is in fact, invalid. Id. Acts done in the exercise of
an asserted right of use or ownership of realty constitute a cloud on title. Humble Oil & Refining
Co. v. Sun Oil Co., 191 F.2d 705, 719 (5th Cir. 1951), cert. denied, 342 U.S. 920 (1952).

 Here, Appellants attempted to foreclose on the property and filed suit to recover the property
from Netterville asserting that they were the legal owners of the land. This is some evidence of
probative force to support the finding that Appellants clouded title to the property. McLaughlin,
943 S.W.2d at 430; Sun Oil Co., 191 F.2d at 719. Therefore, Appellants' no evidence challenge
must fail. The record presents no evidence contrary to the jury's finding. Accordingly, Appellants'
factual sufficiency challenge must also fail. Cain, 709 S.W.2d at 176. We overrule Appellants'
sixth issue.


Attorney's Fees

 In their eighth issue, (1) Appellants contend the evidence does not support the jury's award for
Netterville's attorney's fees. Among other arguments, Appellants assert that the award cannot stand
because Netterville did not prevail on a claim for which attorney's fees are recoverable. Netterville
responds that the award of attorney's fees is based on claims by both sides for declaratory relief and
asserts that the evidence is sufficient to support the award.

 The jury determined that $17,000.00 would be a reasonable fee for the preparation and
handling of Netterville's claims through trial. The trial court offset that amount by $1,434.00 which
Netterville owed Appellants as a result of earlier proceedings. Accordingly, the trial court ordered
that Netterville receive $15,566.00 in attorney's fees for the preparation and handling of the case
through trial and, in accordance with the jury's awards, a total of $25,000.00 in appellate attorney's
fees. 

 Attorney's fees are not recoverable unless authorized either by statute or by contract. Sadler
v. Duvall, 815 S.W.2d 285, 293 (Tex. App.-Texarkana 1991, writ denied). A party seeking
attorney's fees must show that the fees were incurred on a claim that allows recovery of such fees. 
Stewart Title Guaranty Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997). Attorney's fees are not
available for a cloud of title action. Sadler, 815 S.W.2d at 294. A party may recover its necessary
attorney's fees in a declaratory judgment action. Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 1997). However, a declaratory judgment action may not be used solely to obtain attorney's
fees that are not otherwise authorized by statute or to settle disputes already pending before a court. 
Southwest Guaranty Trust Co. v. Hardy Rd. 13.4 Joint Venture, 981 S.W.2d 951, 956 (Tex. App.-
Houston [1st Dist.] 1998, pet. denied) (on reh'g).

 Here, Appellants sued to remove cloud on title and quiet title. They argued that title was
clouded by a deed they wanted declared void. Similarly, Netterville counterclaimed for a declaration
that he is the rightful owner and requested the court remove the cloud cast by Appellants. We
conclude the declaratory judgment claims of each side are really claims to quiet title. All claims seek
to clear the property's title, are based on the same facts, and request similar relief. See id. at 957. 
Accordingly, the claims for declaratory judgment cannot be used to support an award of attorney's
fees. We sustain Appellants' eighth issue.


Conclusion

 We reform the judgment to delete the awards for attorney's fees. We also delete the trial
court's decree that Netterville has fully satisfied this court's judgment of October 28, 1999, in which
we ordered Netterville to pay costs of the first appeal in this cause. As modified, we affirm the trial
court's judgment.




 SAM GRIFFITH 

 Justice



Opinion delivered January 16, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.



(DO NOT PUBLISH)
1. There is no seventh issue included in Appellants' brief.